UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY W. BROOM,

                    Petitioner,

vs.                                Case No.  2:03-cv-435-FtM-29DNF

FLORIDA   PAROLE   COMMISSION   and
ATTORNEY GENERAL, STATE OF FLORIDA,[1]

                    Respondents.
_____

## OPINION AND ORDER

Petitioner Anthony W. Broom (hereinafter Petitioner or Broom), who is proceeding *pro se*, initiated this action by filing a timely Petition for Writ of Habeas Corpus (Doc. #1, Petition; Doc. #2, Supporting Memo.) pursuant to 28 U.S.C. § 2241.  Petitioner challenges the Florida Parole Commission's decision to suspend his Presumptive Parole Release Date ("PPRD") and requests that the Court compel the Parole Commission to establish his Effective Parole Release Date ("EPRD").  Supporting Memo. at 2; Petition at 1.

_____

[1]The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfeld v. Padilla, 124 S. Ct. 2711, 2717 (2004).  This is "'the person with the ability to produce the prisoner's body before the habeas court.'"  Id.  In this case, the proper party Respondent is the Florida Parole Commission and as such the Court *sua sponte* dismisses the Attorney General of the State of Florida as a named Respondent.

Respondent filed a Response to the Petition for Writ of Habeas Corpus (Doc. #7, Response), and submitted numerous exhibits (Doc. #8, Exh. A - Exh. AA) supporting the Response. Petitioner filed a Reply to the Response (Doc. #9, Reply) and Notice of Supplemental Authority (Doc. #10).

**I.**

On December 23, 1981, Petitioner was sentenced to life in state prison after being tried and found guilty of Second Degree Murder with a Firearm in the Tenth Judicial Circuit in Polk County Florida.[2]  Response at 2; Exh. A.  On December 12, 1989, Petitioner was released from jail to parole supervision.  Response at 2, Exh. B.

On March 29, 1996, the Parole Commission issued a warrant for Petitioner, charging him with a violation of the terms and conditions of his parole.  Response at 2, Exh. C.  In particular, the warrant indicated that Petitioner violated three conditions of his supervised release: Condition 4(a) for failure to "not use alcohol or intoxicants or any kind"; Condition 7 for failure "to obey all laws, ordinances or statutory conditions of Parole" in that Petitioner "unlawfully operated a motor vehicle while intoxicated"; and Special Condition 13, for failure to "abstain from the use of any intoxicating beverages."  Exh. C.  Petitioner

---

[2]At the time Petitioner filed the Petition, he was held in custody at Desoto Correctional Institution, located in Arcadia, Florida, which is within the venue of this Court.  See Doc. #4.

had been arrested for "driving under the influence" on or about January 1, 1996. Id. The "violation report form narrative" stated that Petitioner was ticketed and arrested in Pinellas County, Florida, for driving under the influence; Petitioner refused to submit to a breathalyzer test. Id.

Petitioner requested a continuance of the preliminary parole hearing until after the disposition of the pending state criminal charges in case number 96-112022. Response at 2, Exh. D. On June 12, 1996, Petitioner was temporarily released by the Parole Commission on Petitioner's own recognizance, pending further order of the Parole Commission.[3] Response at 2, Exh. E. On December 9, 1996, Petitioner entered a plea of *nolo contendere* in Pinellas County Court to the offense of driving under the influence of "prescription medication." Response at 3, Exh. G (emphasis in original).

On January 7, 1997, the Parole Commission issued an order revoking the release of Petitioner on his own recognizance. Response at 3, Exh. F. Petitioner had a pre-revocation parole hearing interview on February 7, 1997, Exh. H, and a final parole revocation hearing on February 27, 1997, Exh. I. The record from the final parole revocation hearing indicates that no direct testimony was submitted due to Petitioner's admission of guilt on

---

[3]Apparently in June 1996, Petitioner indicated to the Parole Commission that he was pursuing back surgery.

all of the alleged violations.  Id.  At the hearing, Petitioner's parole officer stated that Petitioner generally complied with the supervised conditions, but believed Petitioner used his medical problems and use of prescription medicine as an excuse after he was arrested for driving under the influence.  Id.  Petitioner's parole officer stated that she caught Petitioner in previous lies concerning his medical problems and further stated that she believes Petitioner was "'milking the system'" to avoid revocation of his parole.  Id.  In mitigation, Petitioner's private counsel stated that the arresting police officer's report contained a discrepancy regarding Petitioner's alcohol consumption.  Id. Further, counsel stated that he traced Petitioner's activities on the day in question and prepared witness affidavits supporting Petitioner's contentions that he did not drink alcohol on the day in question.  Id.

The Parole Examiner found Petitioner guilty of violating Condition 7 based on Petitioner's admission that he failed to obey all laws, ordinances, and statutory conditions of parole when he unlawfully operated a motor vehicle under the influence.  Id. Also, the Parole Examiner found Petitioner guilty of violating Condition 7 based on Petitioner's admission that the charge entered in Pinellas County Circuit Court was true.  Id.  Based on the foregoing, the Parole Commission revoked Petitioner's parole supervision on March 26, 1997.  Response at 3, Exh. J.

On August 26, 1997, Petitioner was afforded an interview to determine his Presumptive Parole Release Date ("PPRD"). Response at 3. On October 22, 1997, the Parole Commission established Petitioner's PPRD to be December 22, 2001. Response at 3; Exh. K. On November 14, 1997, Petitioner requested a review of his PPRD, which the Parole Commission decided not to change on December 10, 1997. Exh. L.

Petitioner had a biennial interview on September 28, 1999. On November 3, 1999, the hearing examiner for the Parole Commission reduced Petitioner's PPRD by twelve months to December 22, 2000. Response at 3, Exh. M. However, on November 8, 2000, the Parole Commission declined to authorize the hearing examiner's Effective Parole Release Date ("EPRD") because the Commission did not make a positive finding as required by Florida Statute § 947.18. Response at 4; Exh. N. The Parole Commission re-docketed the case for an extraordinary review. Response at 4; Exh. N.

The Parole Commission held an extraordinary review and on December 6, 2000, suspended Petitioner's PPRD. Response at 4; Exh. O. During the extraordinary review the Parole Commission reviewed, *inter alia,* Petitioner's records held by the Department of Corrections and his psychological evaluations. Exh. O. In pertinent part, the Commission found:

> [T]he inmate's conviction for the instant offense, his
> aggressive and assaultive behavior [,] which is reflected
> in his conviction for a violent offense and serious
> history of aggressive or assaultive behavior, his ongoing

> criminal behavior [,] which is reflected in his
> recidivism while under community based supervision, and
> his need for further treatment particularly in relation
> to his substance abuse problems demonstrates his
> unsuitability for community based supervision and are not
> conducive indicators for a successful parole [sic]. The
> Commission finds the inmate is in need of continued
> observation and treatment in a structured environment.

Id.  The Parole Commission indicated that Petitioner's next extraordinary interview would take place in July 2005.  Id.

In February 2001, Petitioner served a Petition for Writ of Mandamus in the Circuit Court of the Second Judicial Circuit, Leon County, Florida, case number 01-543.  Response at 4; Exh. P. Petitioner sought a writ to direct the Parole Commission to establish his EPRD. Exh. P.  In summary, Petitioner raised three grounds: (1) the Parole Commission abused its discretion in suspending his PPRD and failing to establish his EPRD; (2) the Parole Commission failed to perform its ministerial duty after establishing Petitioner's PPRD by improper considerations of legislative meaning and/or improper use of Section 947.18, Florida Statutes, by not authorizing his ERPD; and (3) the Parole Commission illegally extended Petitioner's parole interviews from two to five years.  Id. at 2, 18,24.

In Ground One, Petitioner argued that the Commission violated the Objective Parole Guideline Act of 1978 when it suspended Petitioner's PPRD and failed to establish his ERPD.  Id. at 5. Specifically, Petitioner argued that the Commission's written reasons supporting why it decided to suspend Petitioner's PPRD were

erroneous.  Id. at 8-18.  Petitioner listed each reason he believed to be incorrect, ranging from issues in his pre-sentence investigation report involving his underlying conviction to questions concerning the evaluation conducted by an "intern," not a licenced psychologist, which the Parole Commission relied on during its extraordinary review.  Id. at 8-15.

With regard to Ground Two, Petitioner argued that once the PPRD was established, the Commission could only change the PPRD for "reasons of institutional conduct, acquisition of new information not available at the time of the initial interview, or for good cause in exceptional circumstances."  Id. at 20-21.  Petitioner argued that his institutional behavior was satisfactory and there was no new information that was not available at his initial interview in 1982, or his subsequent interview in 1997.  Id. at 24.

Last, with regard to his parole interview dates, Petitioner argued that the Commission improperly based its decision to extend his interview from two to five years because of his underlying conviction for second degree murder, elements of the conviction (such as use of firearm), and his mental health status.  Id. at 24-25.  Petitioner argued that the Commission was not allowed to use his conviction or elements thereof as an "aggravating factor."  Id. Also, Petitioner argued that the Commission improperly relied upon an "intern's" evaluations of his mental health condition.  Id. at 25.  Last, Petitioner argued that the Parole Commission's decision

to extend his interview violated the *Ex Post Facto* Clause. <u>Id.</u> at 26-29.

The Florida Parole Commission filed a Response addressing each of Petitioner's arguments in the Petition for Writ of Mandamus. Exh. R.  Petitioner filed a Reply.  Exh. S.  Thereafter, on November 5, 2001, the Circuit Court for the Second Judicial Circuit entered an Order (Exh. T) denying the Petition for Writ of Mandamus:

> Having considered the Petition for Writ of Mandamus, the Response filed by Defendant, the Florida Parole Commission, and all other pleadings filed in this case, the Court finds that Plaintiff is not entitled to the extraordinary relief he is seeking.
>
> In the case at bar, the Plaintiff alleges improprieties in the Commission authorizing his effective parole release date.
>
> The Court finds that Plaintiff has not established that he is entitled to mandamus relief. <u>See</u> <u>Baker v. Florida Parole and Probation Commission</u>, 384 So. 2d 746, 748, (Fla. 1st DCA 1980).
>
> The Court further finds that the Commission may suspend the Plaintiff's presumptive parole release date [PPRD] and not authorize his effective parole release date [EPRD] pursuant to Section 947.18, Florida Statutes. Section 947.18, Florida Statutes, gives the Commission final decision of whether or not to grant parole. <u>See</u> <u>Florida Parole and Probation Commission v. Paige</u>, 462 So. 2d 817 (Fla. 1985).
>
> The Court further finds that there is no merit to Plaintiff's claim that the Commission failed to base its determination regarding establishing his effective parole release date upon a proper review of the record pursuant to Rule 23-21.015(7), Florida Administrative Code. The Plaintiff's allegations are unsupported. Further, the Commission indicated on the Extraordinary Review action that its decision not to authorize the Plaintiff's

effective parole release date was based upon, among other things, its review of the Plaintiff's record.

The Court further finds that the Plaintiff's allegations, that the Commission's written reasons for denying him parole were erroneous and misleading statements, have no merit. From a review of the information submitted, it appears that the reasons provided by the Commission are supported by the record.

The Court further finds that the Plaintiff has not shown any correlation between the statements made by one of the Commissioners and him not being granted parole.

The Court also finds that there has been no misrepresentation, on the part of the Commission, in incorrectly identifying the Plaintiff's sentence. The judgment from the Polk County Circuit Court indicates that the Plaintiff was sentenced to life on the charge of Second Degree Murder with Firearm.

The Court also finds that the Commission may rely on the information provided in the Pre-Sentence Investigation when identifying the circumstances of the offense. See Adams v. State, 560 So. 2d 321 (Fla. 1st DCA 1990); Jones v. Florida Parole and Probation Commission, 413 So. 2d 861 (Fla. 1st DCA 1982); Bradbury v. Florida Parole and Probation Commission, 420 So. 2d 901 (Fla. 1st DCA 1982).

The Court further finds that the Commission may consider the Plaintiff's criminal history when determining whether to parole the Plaintiff. Under the Parole Commission's rulemaking authority provided for by Chapter 927, Florida Statutes, the Commission may implement rules upon which parole decisions are made. Pursuant to the authority, the Commission promulgated Rule 23-21.007, Florida Administrative Code, which authorized the Commission to consider an individuals prior criminal history when making parole decisions.

The Court further finds that the Commission, when making parole decisions, may rely upon information provided in the psychological evaluations. The Plaintiff contends psychological reports provided erroneous information; however, the Plaintiff has failed to substantiate these claims. Further, the claim made by the Plaintiff that the Commission relied on the intern evaluator's

statements and opinion without a factual basis is without merit.

The Plaintiff contends that the Commission improperly considered his past history of assaultive and violent behavior.  The Court does not find the Commission acted inappropriately.  The Plaintiff's past behavior may be taken into consideration by the Commission when making parole decisions.  The behavior that the Plaintiff is referring to resulted in him getting convicted of the offense of battery.  Pursuant to Rule 23-21.007, Florida Administrative Code, the Commission may use the Plaintiff's prior criminal history when making parole decisions.

The Court further finds that the Commission may consider "old" information when making parole decisions pursuant to Paige v. Florida Parole and Probation Commission, supra.  The Commission is not required to rely solely on "new" information each time a parole decision is made.

The Court also finds that there was no impropriety on the part of the Commission in taking notice of letters that were submitted by the Office of the State Attorney. Section 947.1745(6), Florida Statutes, provides no support to this claim made by the Plaintiff.

Section 947.1745, Florida Statutes, does not prevail over Section 947.18, Florida Statutes.  The Plaintiff's reliance on Gobie v. Florida Parole and Probation Commission, 416 So. 2d 838 (Fla. 1st DCA 1982) is unpersuasive.  When the legislature implemented the Objective Parole Guidelines Act, Section 947.18, Florida Statutes, was not deleted, but remained.  There appears no intent by the legislature for Section 947.1745, Florida Statutes, and Section 947.18, Florida Statutes, to be in conflict, but, on the contrary,  both statutes are to be implemented when making parole decisions.

The Plaintiff's contentions that Section 775.021(1), Florida Statutes, should prevail when Section 947.18 and 947.1745, Florida Statues, are in conflict, is unpersuasive. Section 775.021(1), Florida Statutes, does not apply in this case as Sections 947.1745 and 947.18, Florida Statutes, are not differing in constructions.

The Commission has not violated the ex post facto clause by extending the Plaintiff's interview date from two (2)

to five (5) years.  There has not been any retrospective application and the Plaintiff's original sentence, of life in prison, has not been altered.  See Tuff v. State, 732 So. 2d 461 (Fla. 3d DCA 1990).

Contrary to Plaintiff's contentions, the Commission did not use his conviction or the elements of his conviction as aggravating factors.  The Court finds that the findings "firearm used in offense" and "risk to others" were used as findings to schedule the Plaintiff's interview within five (5) years instead of two (2) years, not as aggravating factors.  The Plaintiff's DUI conviction in case number 96-112022 was properly used as aggravating factors.  See Rule 23-21.010, Florida Administrative Code.

Accordingly, the Plaintiff is not entitled to the extraordinary judicial relief he is seeking.

Exh. T.

On December 13, 2001, Petitioner filed a Motion for Re-Hearing with the Circuit Court for the Second Judicial Circuit. Response at 8.  The Circuit Court denied Petitioner's motion on December 13, 2001.  Id., Exh. U.  Petitioner then appealed the lower court's ruling to the First District Court of Appeal by filing a Petition for Writ of Certiorari in case number 1D01-5176. Response at 8, Exh. V.  The First District Court of Appeal denied Petitioner's appeal on March 18, 2003.  Response at 9, Exh. Y.  Petitioner requested a re-hearing, which the First District Court of Appeal denied on June 11, 2003, and mandate issued on June 27, 2003. Response at 9, Exh. Z, Exh. AA.  Petitioner filed the § 2241 petition on August 4, 2003.

## II.

A petitioner who files a § 2241 motion related to decisions by a parole commission must abide by the applicable restrictions in 28 U.S.C. § 2254.  Thomas v. Crosby, 371 F.3d 782 (11th Cir. 2004); Dill v. Holt, 371 F.3d 1301 (11th Cir. 2004); Peoples v. Chatman, 393 F.3d 1352 (11th Cir. 2004).  Because Petitioner filed his Petition after April 24, 1996, this case is governed by the amendments to § 2254 set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y for Dept. of Corrections, 304 F.3d 1345, 1346 (11th Cir. 2002).  The AEDPA establishes a highly deferential standard of review for state court judgments.  Parker v. Sec'y for Dep't of Corr., 331 F.3d 764 (11th Cir. 2003).  The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  Several aspects of § 2254, as amended by the AEDPA, are relevant to reviewing this Petition.

### A.

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the ground that petitioner is in custody in

violation of the United States Constitution or the laws or treaties of the United States.  28 U.S.C. § 2254(a).  A violation of state law that does not rise to the level of a constitutional violation is insufficient to warrant review or relief by a federal court under § 2254.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

### B.

If the grounds asserted warrant review by a federal court under § 2254, a petitioner must have afforded the state courts an opportunity to address the federal issues.  28 U.S.C. 2254(b)(1)(A); Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998), cert. denied, 525 U.S. 963 (1998).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Henderson, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Snowden, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its

prisoners' federal rights.'" (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)).[4]

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." Smith, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson, 353 F.3d at 891 (quoting Judd v. Haley, 250 F.3d at 1313).

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. Henderson, 353 F.3d at 892. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. Id. "Cause" ordinarily requires a petitioner to

_____

[4]Here, Petitioner properly filed a writ of mandamus to the circuit court and then a petition for certiorari to the district court. See Riveria v. State, 939 So. 2d 116, 117 (3d DCA 2006).

-14-

demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Id.; Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995), cert. denied, 519 U.S. 838 (1996).  To show "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson, 353 F.3d at 892.  Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Henderson, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."  Henderson, 353 F.3d at 892; House v. Bell, 126 S. Ct. 2064 (2006).

### C.

Even where the claim is federal in nature and has been properly exhausted, additional § 2254 restrictions apply.  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  <u>See</u> <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Price v. Vincent</u>, 538 U.S. 634, 638-39 (2003).  "[C]learly established [Federal] law" is the governing legal principle, not the *dicta*, set forth by the United States Supreme Court at the time the state court issues its decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660-61 (2004); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law.  <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16 (2003); <u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir. 2003).  A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  <u>Brown</u>, 544 U.S. at 141; <u>Stephens v. Hall</u>, 407 F.3d 1195, 1202 (11th Cir. 2005)(citations omitted).  A state court decision does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Secretary</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but applies it to the facts of the particular inmate's case in an objectively unreasonable manner; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. Brown, 544 U.S. at 1439; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The unreasonable application inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Mitchell, 540 U.S. at 17-18; Andrade, 538 U.S. at 75-77; Vincent, 538 U.S. at 639; Woodford v. Visciotti 537 U.S. 19, 25 (2002); Williams v. Taylor, 529 U.S. 362, 409-10 (2000). Depending upon the legal principle at issue, there can be a range of reasonable applications. Alvarado, 541 U.S. at 663-64. Thus, a federal court's review is not de novo, but requires a showing that the state court decision is objectively unreasonable. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where credibility is at issue, relief may only be granted if it was unreasonable for the state court to credit the

testimony of the witness.   <u>Rice v. Collins</u>, 126 S. Ct. 969, 974
(2006).   Additionally, a factual finding by a state court is
presumed to be correct, and a petitioner must rebut the presumption
of correctness by clear and convincing evidence.   28 U.S.C. §
2254(e)(1); <u>Miller-El v. Dretke</u>, 125 S. Ct. 2317, 2325 (2005);
<u>Henderson</u>, 353 F.3d at 890-91.   The statutory presumption of
correctness applies only to findings of fact made by the state
court, not to mixed determinations of law and fact.   <u>Parker v.
Head</u>, 244 F.3d 831, 836 (11th Cir. 2001).

### III.

### A.

The § 2241 Petition asserts "due process of law violations and
retroactive application of Rules and State Statutes, which reach to
a miscarriage of justice."   Petition at 8.   Specifically,
Petitioner raises the following six grounds for relief:

> (1) The Objective Parole Guidelines Act of 1978
> ("OPGA of 1978") created a liberty interest in a parole,
> and therefore the PPRD became binding and could only be
> changed for special reasons, which were absent in this
> case.   Changing the PPRD in this case violated
> Petitioner's rights to due process and equal protection.

> (2) Petitioner's psychological evaluation was void
> *ab initio* because the evaluator was an unsupervised
> intern, and as such his evaluation violated Florida
> statute requiring that an intern remain under
> supervision.   Additionally, the illegal psychological
> evaluation was not provided to Petitioner as mandated by
> Florida statute, although it was utilized by the Parole
> Commission.   These circumstances violated Petitioner's
> rights to due process and equal protection.

(3) The Rule of Lenity must be applied when there is a conflict between statutes, as when the Parole Commission uses one statute to usurp all other statutes and deny parole. This circumstance violated Petitioner's rights to due process and equal protection.

(4) Florida Statutes dealing with parole must be read *pari material* in that the OPGA set the standard and prohibited the Parole Commission's practice of applying Fla. Stat. § 947.18 in a subjective and prognostic manner. This circumstance violated Petitioner's rights to due process and equal protection.

(5) The Parole Commission's Rule used to suspend a valid parole date is in violation of Florida Statutes, and a parole date cannot be changed without a valid reason. This circumstance violated Petitioner's rights to due process and equal protection.

(6) The Parole Commission illegally, and in violation of the *Ex Post Facto* Clause, extended Petitioner's parole interview from two to five years, in violation of his rights to due process and equal protection.

Each ground also asserts corresponding provisions of the Florida Constitution. Also, although not listed as an enumerated claim, the Petition for the first time challenges the Parole Commission's initial revocation of Petitioner's parole for violations of the conditions of Petitioner's release when he admitted to driving under the influence. Supporting Memo. at 2-3.

**B.**

To the extent that the Petition claims violations of state statutes or the Florida Constitution, or the misinterpretation of Florida law, such claims are not cognizable under § 2241 or § 2254 because federal habeas relief is not available for errors of state law. Estelle v. McGuire, 502 U.S. at 67-68. Thus, Petitioner's

disagreement with the Florida law as found by the state courts in his case in Grounds 1 through 5 cannot be a basis for federal habeas relief. Additionally, a claim that the Florida Parole Commission has committed an *ex post facto* violation by extending Petitioner's parole interview from two years to five years is not cognizable in a federal habeas petition. Thomas v. McDonough, 228 Fed. Appx. 931 (11th Cir. 2007)(claim that Florida Parole Commission committed *ex post facto* violation by performing only biannual parole reviews, where annual parole reviews had been required at time of petitioner's conviction, not cognizable.)

## C.

Petitioner's federal due process and equal protection claims are cognizable in a federal habeas petition, if petitioner exhausted remedies available to him in state court. While the Parole Commission has not raised exhaustion, it also has not waived the exhaustion requirement. 28 U.S.C. § 2254(b)(3). Accordingly, the Court will consider whether exhaustion has been satisfied in this case. Dill v. Holt, 371 F.3d 1301, 1302 n.1 (11th Cir. 2004); McNair v. Campbell 416 F.3d 1291, 1304 (11th Cir. 2005).

As discussed above, Petitioner was required to exhaust his available state remedies by presenting his federal constitutional claims to at least one full round of state courts. In this case, Petitioner never presented his federal due process or equal protection claims to the state courts. Rather, his claims were

always based upon state law provisions.  Accordingly, Petitioner has failed to exhaust his federal constitutional claims.

**D.**

Alternatively, Petitioner is not entitled to relief on the merits.  The United States Supreme Court has ruled that a prisoner has no due process right under the Constitution to be conditionally released before the expiration of his sentence, unless the state creates such a right through its parole system.  <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979)(distinguishing, in dicta, parole release from parole revocation).  Under Florida law, a prisoner has no protected liberty interest in the establishment of a presumptive parole release date.  <u>See</u> <u>Staton v. Wainwright</u>, 665 F.2d 686, 687-88 (5th Cir. 1982)[5] (applying applicable Florida statutes and reasoning that "[t]he decision if and when to parole an inmate is left to the discretion of the Commission" and therefore no entitlement or liberty interest in parole is created by the Florida statutes); <u>Jonas v. Wainwright</u>, 779 F.2d 1576, 1577 (11th Cir. 1986)(holding that "[t]here is no constitutional right to parole in Florida.").  The Parole Commission retains the sole discretion in determining whether to release an inmate on parole.  <u>Glumb v. Honsted</u>, 891 F.2d

---

[5]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

872, 873 (11th Cir. 1990) ("[p]arole is not a right, but an expectation."). Under Florida law:

> No person shall be placed on parole merely as a reward for good conduct or efficient performance of duties assigned in prison. No person shall be placed on parole until and unless the commission shall find that there is a reasonable probability that, if he is placed on parole, he will live and conduct himself as a respectable and law-abiding person and that his release will be compatible with his own welfare and the welfare of society. No person shall be placed on parole unless and until the commission is satisfied that he will be suitably employed in self-sustaining employment, or that he will not become a public charge. The commission shall determine the terms upon which such persons shall be granted parole. In addition to any lawful condition of parole, the commission may make the payment of debt due and owing to the state under s. 960.17 a condition of parole, subject to modification based on change of circumstances.

FLA. STAT. § 947.18.

Here, the record before the Court evidences that the Parole Commission held an "extraordinary review," after which the Commission did not make a positive finding pursuant to FLA. STAT. § 947.18 and thus suspended Petitioner's PPRD. The Court concludes that the Parole Commission's decision was not based on a decision contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. Based on the foregoing reasons, the Court finds Grounds One, Two, Three, Four, and Five do not warrant habeas relief.

In Ground Six, Petitioner challenges the Parole Commission's decision to move his parole interviews from two years to five years. Petition at 14; Supporting Memo. at 17. Petitioner argues

that a "five-year parole interview violates the *Ex Post Facto* Clause" because when he was convicted in 1981 and sentenced to life in prison, his parole interviews occurred every two years. Petition at 14; Supporting Memo. at 17.  Thus, Petitioner argues that the denial of his parole interviews from taking place every two years violates his due process rights.  Id.

The Respondent disagrees with Petitioner's argument. Response at 19.  Respondent explains that in 1997 the Florida legislature amended the State's parole statute in that the Commission could decide to extend the time for parole interviews for certain crimes from two years to five years.  Id. at 19.  In particular, § 947.174(b), of the amended Florida Statutes, provides:

> For any inmate convicted of murder, attempted murder, sexual battery, or who has been sentenced to a 25-year minimum mandatory sentence previously provided in s. 775.082, and whose presumptive parole release date is more than 5 years after the date of the initial interview, a hearing examiner shall schedule an interview for review of the presumptive parole release date.  Such interview shall take place once within 5 years after the initial interview and once every 5 years thereafter if the commission finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing.  For any inmate who is within 7 years of his or her tentative release date, the commission may establish an interview date prior to the 5-year schedule.

Response at 19-20 (quoting FLA. STAT. § 947.174(b)).  Respondent notes, however, that the Florida Statutes allow the Parole Commission to request a subsequent hearing at any time.  Id. at 20.

-23-

Additionally, Respondent states that § 947.1745(6), Florida Statutes, states:

> . . . However, for an inmate who has been:
> (a) Convicted of murder or attempted murder;
> (c) Convicted of sexual battery or attempted sexual battery; or
> (b) sentenced to a 25-year minimum mandatory sentence previously provided in s. 775.082, the commission may schedule a subsequent review under this subsection once every 5 years, extending the presumptive parole release date beyond that time if the commission finds that it is not reasonable to expect that parole would be granted at a review during the following years and states the bases for the finding in writing . . . .

Id. at 20.  Respondents argue that the Parole Commission complied with the foregoing statutory authority.  Id., Exh. O.

The *Ex Post Facto* Clause of the United States Constitution prohibits the states from making laws "which, by retroactive operation, increase the punishment for a crime after its commission."  Penoyer v. Briggs, 206 Fed. Appx. 962, 965 (citing Garner v. Jones, 529 U.S. 244 (2000)).  "While '[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept [,] not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited.'"  Id.  The determinative question is "whether retroactive application of the change in [the state] law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'"  Id.  (quoting California Dept. of Corrs. v. Morales, 514 U.S. 499, 509 (1995)).

The Plaintiff bears the burden of showing that the law "create[s] a significant risk of increasing the punishment." Id.

"A federal court will not reverse a decision of the Commission unless it involves flagrant, unwarranted, or unauthorized action that constitutes an abuse of the Commission's discretion." Glumb v. Honsted, 891 F.2d 872, 873 (11th Cir. 1990) (citing Whitehead v. United States Parole Com., 755 F.2d 1536, 1537 (11th Cir. 1985)). The Eleventh Circuit Court of Appeal in Penoyer v. Briggs, 206 Fed. Appx. 962 (11th Cir. 2006), addressed the instant issue raised by Petitioner. Id. at 966. In Penoyer, Plaintiff filed a § 1983 Complaint alleging violations of his constitutional rights, inter alia, stemming from the Florida legislature's changes to the parole laws. Id. at 965. The Court affirmed the district court's dismissal of Plaintiff's § 1983 Complaint on other grounds, specifically applying § 1915 (e)(2)(B)(i). The Eleventh Circuit, noting the similarities between § 947.174 of the Florida Statutes and the California statute at issue in California Dept. of Corrs. v. Morales, 514 U.S. 499 (1995), found that the Florida legislature's decision to extend certain prisoners' parole interviews from 2 to 5 years did not violate the Ex Post Facto Clause. Id. at 966. The Court based its decision on the following factors in the Florida statute: applies to only a narrow class of prisoners and only affects the timing of subsequent parole hearings, not the initial hearing; requires the Parole Commission

make a "specific finding" that "it is not reasonable to expect that parole would be granted at a hearing during the following [five] years"; and that the Commission must support its decision by explaining it in writing. Id. at 967 (internal citations omitted). Also, the Eleventh Circuit found the Florida Statute 947.174 similar to the statute in Morales because "it appear[ed] that this statute was crafted to reduce the 'futile' work of frequently 'reannouncing' the denial of parole to a class of prisoners who, in the Commission's broad discretion, were very unlikely to warrant it." Id.

Here, the Court agrees with the Respondent's argument. The Parole Commission found that it was unreasonable to expect that Petitioner would be granted parole during the following years. Exh. O. The record evidences that the Parole Commission explained their decision to extend Petitioner's parole interviews from 2 to 5 years in writing. Exh. O. The Court does not find that the Parole Commission abused its discretion. Moreover, Petitioner does not sustain his burden of showing how this Florida statute increased his punishment as he was sentenced to life in prison for second degree murder. The Court concludes that the Parole Commission's decision was not based on a decision contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. Based on the

foregoing, the Court finds Ground Six does not warrant habeas relief.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Court *sua sponte* dismisses the Florida Attorney General as a named Respondent.

2. The Petition for Writ of Habeas Corpus (Doc. #1) is **DISMISSED** as to those claims which are not cognizable and those cognizable claims which have not be exhausted in state court, and in the alternative is **DENIED** as without merit in its entirety.

3. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___18th___ day of January, 2008.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record

-27-